UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE KYLE,

        CASE NO. 10-12597
Plaintiff,        HON. LAWRENCE P. ZATKOFF

v.

ENCOMPASS INSURANCE COMPANY,

Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on July 7, 2011

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Plaintiff's motion for partial summary judgment regarding wage loss [dkt 17], Plaintiff's motion for partial summary judgment regarding medical bills [dkt 19], Plaintiff's motion for partial summary judgment regarding replacement services and mileage [dkt 38], and Defendant's motion for partial summary judgment regarding wage loss [dkt 39]. The motions have been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. The motions will be addressed in turn.

## II. BACKGROUND

Plaintiff brings this action for first party personal protection insurance benefits under Mich. Comp. Laws § 500.3101 *et seq.*, as a result of injuries Plaintiff sustained in an automobile accident

on October 5, 2009. Plaintiff seeks damages for unpaid medical bills, decreased wages, replacement services and medical mileage.

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere

existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

**A.    UNPAID MEDICAL BILLS**

In her four-page brief in support of her motion for partial summary judgment, Plaintiff asserts that between December 1, 2009, and February 25, 2010, Plaintiff incurred $36,789.81 in medical expenses, of which $35,649.41 remains unpaid by Defendant. Plaintiff argues that the Court should grant her summary judgment with respect to her unpaid medical bills based on the deposition testimony of Defendant's claim handler, who stated that Defendant denied payment due to a priority in coverage dispute with Plaintiff's health insurance provider. In reliance on *Spectrum Health v. Titan Ins. Co.*, No. 275341, 2008 Mich. App. LEXIS 706 (Mich. Ct. App. April 8, 2008), Plaintiff argues that denying benefits solely on the basis of a priority dispute is unreasonable and entitles the insured to payment of medical bills, costs, and attorney fees. *Id.* at *6 ("'[W]hen the only question is which of two insurers will pay, it is unreasonable for an insurer to refuse payment of benefits.'") (quoting *Regents of the Univ. of Mich. v. State Farm Mut. Ins. Co.*, 250 Mich. App. 719, 737 (Mich. Ct. App. 2002)); *see also Saroli v. Hastings Mut. Ins. Co.*, No. 217613, 2001 Mich. App. LEXIS 2153, at *3 (Mich. Ct. App. July 10, 2001) ("[A] priority dispute among insurers will not excuse an insurer's delay in making timely payments.").

However, the Court finds that Plaintiff has not satisfied her initial burden of showing that there are no genuine disputes as to any material facts. Under Michigan law, "an insurer is liable to

pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." Mich. Comp. Laws § 500.3105(1). Benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Mich. Comp. Laws § 500.3107(1)(a).

Here, Plaintiff seeks partial summary judgment with respect to her unpaid medical bills without offering any evidence regarding whether the medical bills are related to her 2009 accident, or whether the medical bills related to reasonably necessary products, services, or accommodations for Plaintiff's care. Defendant, on the other hand, argues that there is a genuine dispute as to whether Plaintiff's claims are related to the 2009 accident or previous accidents in which Plaintiff was involved, citing to one of Plaintiff's answers to interrogatories:

> I was rear ended in a motor vehicle accident in 1990 and think there was a claim with the other insurance company. I do not recall the name, but think it may be State Farm. I was also rear ended in 1987 in a motor vehicle accident, when I was driving someone else's vehicle. I hit someone in January, 2009 in my vehicle, I do not know if there was a claim, and I think the other person was uninsured. I went to Crittenton Hospital and x-rays were taken. I may have followed up with Dr. Efros or Royal Oak Medical Center, I am not sure. My vehicle was hit on October 21, 2004 at Somerset Mall. As a result I went to the emergency room at Beaumont and saw Dr. Salama, who referred me to physical therapy. I hit a cow in 1996 or 1997 and my vehicle was totaled, I think the claim was handled by Allstate. I was taken to the emergency room and some x-rays were taken. I think the claim was handled by Farm Bureau Insurance.

All that is apparent from Plaintiff's brief is that Defendant declined to reimburse Plaintiff for certain medical bills on the basis of a priority dispute.[1] While Plaintiff argues that it is

---

[1] In her reply brief, Plaintiff argues that "Kenneth Ghary, PA and Dr. Tong related all of Plaintiff's complaints to the October 6, 2009 accident[,]" citing two exhibits. First, the Court

4

unreasonable to deny benefits solely on the basis of a priority dispute, Plaintiff's cited authority does not support the conclusion that payment of medical bills is the appropriate remedy, especially where the insured's entitlement to benefits is in dispute. In *Spectrum Health*, it was undisputed that the insured was entitled to benefits, and the Court analyzed the denial of benefits in relation to a claim for attorney fees under Mich. Comp. Laws § 500.3148(1), which provides that:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

As the court stated, "liability for attorney fees under MCL 500.3148(1) depends on whether [the defendant] unreasonably delayed in making proper payment[,]" and that "[t]he relevant inquiry 'is not whether coverage is ultimately determined to exist, but whether the insurer's initial refusal to pay was reasonable.'" *Spectrum Health*, 2008 Mich. App. LEXIS 706 at *5 (citing *Shanafelt v. Allstate Ins. Co.*, 217 Mich. App. 625, 635 (1996)); *see also Saroli*, 2001 Mich. App. LEXIS 2153, at *2–4 (analyzing a request for attorney fees under Mich. Comp. Laws § 500.3148(1) where the insured's entitlement to benefits was not in dispute).

Thus, even if Defendant denied benefits based solely on a priority dispute, Plaintiff has failed

---

notes that since Plaintiff raised this argument for the first time in her reply brief, the Court may not properly consider it, as Defendant had no opportunity to respond. *See Lexicon, Inc. v. Safeco Ins. Co. of America, Inc.*, 436 F.3d 662, 676 (6th Cir. 2006). Even were the Court to consider such evidence, however, it fails to support Plaintiff's assertion. One exhibit cited by Plaintiff appears to be a medical diagnoses prepared by Dr. Henry Tong, which directed Plaintiff to be off work for 2 weeks due to a slow recovery from an August 27, 2010, radio frequency ablation, which Dr. Tong attributed to the October 2009, accident, but without any explanation. The second exhibit cited is Plaintiff's supplemental answers to interrogatories, which makes no mention of Kenneth Ghary, PA or Dr. Tong.

to demonstrate that she is entitled to anything other than a reasonable attorney fee. With respect to the attorney fee under Mich. Comp. Laws § 500.3148(1), Plaintiff declined to enumerate the fee requested or offer any argument with respect to what a reasonable fee would be under the circumstances of this case. Thus, Plaintiff has failed to present the Court with a sufficient basis upon which to grant her requested relief, and her motion is therefore denied.[2]

**B.    REPLACEMENT SERVICES AND MILEAGE**

Plaintiff also seeks partial summary judgment with respect to costs incurred for replacement services and medical mileage.[3] Again, Plaintiff's brief in support of her motion totals four pages, three-and-a-half of which consist of spreadsheet data for costs Plaintiff incurred and quotations to Michigan's no-fault insurance statutes. On October 6, 2010, Plaintiff submitted documents in support of her claim for benefits to Defendant, and Plaintiff asserts that Defendant has not reimbursed Plaintiff for such costs. One document shows that on October 15, 2010, Dr. Ghary ordered that Plaintiff needed assistance with cooking, vacuuming, laundry, driving/shopping, and lawn mowing/yard work, beginning more than a year earlier on October 6, 2009—the day following the automobile accident in dispute. Dr. Ghary noted that the reason for the diagnosis was back and

---

[2]Plaintiff filed a supplemental brief [dkt 45] in support of her motions regarding unpaid medical bills [dkt 19] and wage losses [17]. However, since Plaintiff did not seek leave of the Court prior to submitting the supplemental briefing, the Court need not consider it. Furthermore, Plaintiff's supplemental briefing merely contains citations to various deposition transcripts, without properly identifying the deponents or offering any explanation as to the relevance of the deposition testimony.

[3]Plaintiff's motion for partial summary judgment only relates to charges known prior to the date on which she filed the present motion. Plaintiff claims that additional charges for replacement services and medical mileage exist, which Plaintiff could not discover prior to filing this motion. Thus, as Plaintiff asserts, granting her motion would not avoid a trial on the issue of her claim for replacement services and mileage.

neck pain resulting from a herniated disk. Another document shows that on September 2, 2010, Dr. Tong ordered that Plaintiff required assistance with identical services from August 17, 2010, to September 17, 2010. Dr. Tong stated that the reason for the diagnosis was the October 2009 motor vehicle accident, disc herniation, neck pain, and back pain. The remaining documents itemize the charges Plaintiff incurred for replacement services and mileage.

According to Plaintiff, she submitted claims for replacement services and medical mileage, and because such claims were not paid, she is entitled to summary judgment as to those claims. However, the Court finds that Plaintiff's cursory analysis of the relevant issues is insufficient to entitle her to an award of summary judgment. To receive such an award, Plaintiff must demonstrate that there is an absence of evidence to support the nonmoving party's position. Here, Plaintiff does not even mention the defenses provided in Defendant's answer, such as that Plaintiff's charges are not proximately caused by the October 2009 automobile accident, let alone demonstrate that there is an absence of evidence to support such defenses. Plaintiff has submitted some evidence in support of her claim, including that Dr. Tong mentioned the October 2009 accident as a basis for recommending replacement services, but such evidence is insufficient to conclude that there is no genuine dispute as to that fact, especially where other evidence shows that Plaintiff was involved in other automobile accidents for which she sought medical treatment for neck and back pain. Therefore, Plaintiff has failed to meet her initial burden of demonstrating that she is entitled to summary judgment. While Plaintiff raises additional arguments in her reply brief, the Court may not properly consider arguments raised for the first time in a reply brief. *See Lexicon, Inc. v. Safeco Ins. Co. of America, Inc.*, 436 F.3d 662, 676 (6th Cir. 2006). Accordingly, Plaintiff's motion for partial summary judgment with respect to replacement services and medical mileage is denied.

**C.     WAGE LOSS**

Plaintiff and Defendant have each filed motions for partial summary judgment with respect to Plaintiff's claim for wage losses. Under Mich. Comp. Laws § 500.3107(1)(b), "personal protection insurance benefits are payable for . . . . Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured." Section 3107(b) specifies that "[the] benefits payable for work loss sustained in a single 30-day period and the income earned by an injured person for work during the same period together shall not exceed [a statutory maximum]." Thus, income earned by an injured person must be deducted from the statutory maximum before benefits are paid. If an injured person earns more income than the statutory maximum, they are not entitled to benefits for wage losses.

Prior to the October 5, 2009, accident, Plaintiff worked as a radio advertising salesperson, and she was compensated on a commission basis based on the amount of sales she made to clients. Plaintiff claims that, following the accident, she earned less wages due to the injuries she sustained in the accident.

    **1.     Plaintiff's Motion**

In her two-page brief, Plaintiff seeks an unspecified award of damages for lost wages arising out of the October 5, 2009, accident, arguing that the following evidence entitles her to summary judgment:

    i)      Tax returns for 2008 and 2009;

    ii)     Social Security Statement showing annual income from 1997 through 2009;

    iii)    Paycheck stubs from March 16, 2010, through June 30, 2010;

    iv)    Disability slip from July 6, 2010, through August 4, 2010;

  v)  Family and Medical Leave Act ("FMLA") disability paperwork;

  vi)  Disability slip from August 7, 2010, through August September 7, 2010; and

  vii)  Disability slip from September 2, 2010, through August September 16, 2010.

While Plaintiff cites to the above documents generally, she fails to explain how they demonstrate that there is an absence of evidence to support Defendant's defenses. Notably, she declined to even address any of the defenses raised in Defendant's answer to the complaint, including Defendant's argument that her injuries are not proximately related to the October 5, 2009, accident.

  After independently reviewing the evidence set forth in Plaintiff's brief, the Court notes that Plaintiff's evidence tends to support her claim for wage losses.  However, the fact that Plaintiff may have earned less wages after the accident does not entitle her to partial summary judgment.  The only evidence Plaintiff cites regarding the cause of her alleged wage losses is a notation by Dr. Tong, discussed *supra* in Part IV(B), in which Dr. Tong directed that Plaintiff be off of work for two weeks due to "10/6/09 MVA, 1) C5–6 disc herniation with neck and upper back pain, s/p RF ablation."  While Dr. Tong referenced the October 2009 motor vehicle accident, there is no way to discern from the notation whether Dr. Tong based that conclusion on his own investigation or whether he simply restated the reason provided by Plaintiff.  Furthermore, Dr. Tong's notation further provided that Plaintiff was "recovering from 8/27/10 radiofrequency ablation[,]" which suggests that the ablation may have been the cause of Plaintiff's time off of work.  Simply put, Plaintiff has failed to meet her initial burden of demonstrating that there are no genuinely disputed facts or that a reasonable jury could not find for Defendant.  Accordingly, Plaintiff's motion for partial summary judgment with respect to her claim for wage losses is denied.

**2.     Defendant's Motion**

In its motion for partial summary judgment, Defendant claims that Plaintiff's claim for wage losses should be dismissed because (i) she earned more wages after the accident occurred, (ii) her post-accident wages were higher than the statutory maximum, (iii) any loss in wages would not have been attributable to the October 5, 2009, accident, and (iv) she failed to mitigate her damages by taking FMLA leave.

*i. Whether Plaintiff Suffered a Loss of Income*

As the parties correctly state, Plaintiff may seek to recover loss of income from work that she would have performed had she not been injured in the October 5, 2009, accident. Mich. Comp. Laws § 500.3107(1)(b). However, the issue of whether Plaintiff suffered a loss of income from work is complicated by the nature of Plaintiff's compensation structure. In the nine months prior to the accident, Plaintiff's monthly compensation ranged from $3,426.98 to $10,576.78. In the nine months following her accident, Plaintiff's monthly compensation ranged from $2,079.80 to $8,731.44.

According to Defendant, in the six months prior to the accident, Plaintiff's average monthly income was $5,968, and in the six-month period from January–June 2010, Plaintiff's average monthly income was $6,314. Thus, Defendant argues, Plaintiff earned more wages after the accident, and therefore did not suffer a loss of income.

Plaintiff's response essentially argues that using a larger sample size for her monthly income yields a different conclusion. According to Plaintiff, her average monthly income from January–September 2009 was $6,590.60, and her average monthly income from October 2009–November 2010 was $5,001.84, meaning that she earned less money after her accident.

Given the fluctuations in Plaintiff's monthly income, both pre and post-accident, the Court finds that the issue of whether Plaintiff suffered a loss of income is a genuinely disputed issue for the jury to consider. While Plaintiff did earn more income in several months after the accident than she averaged before the accident, there were also months following the accident in which she earned significantly less than her pre-accident monthly average. With respect to the months in which Plaintiff earned less than her pre-accident monthly average, a reasonable jury could find that she would have earned more had she not been injured. Simply put, Plaintiff's compensation structure and earnings history presents a significant challenge to Defendant's argument, which Defendant cannot defeat by selecting the most convenient sample of Plaintiff's post-accident monthly earnings that tends to support its defense.

*ii. Whether Plaintiff's Income Exceeded the Statutory Maximum*

Although not discussed in Defendant's motion, Plaintiff argues in her response that the applicable statutory maximum for wage-loss benefits is $4,929 per 30-day period, and that in several months following the accident, her monthly income was less than the statutory maximum, meaning that she is not precluded from recovering wage-loss benefits for those 30-day periods. Defendant replied by stating simply that Plaintiff's post-accident wages were "greater than the maximum allowed wage loss pursuant to the statute[,]" which precludes Plaintiff from recovering benefits for wage losses. However, the Court finds that Defendant's vague and unsupported reply is insufficient to rebut Plaintiff's assertions and earnings data.

*iii. Whether any Loss of Income was Caused by the October 5, 2009, Accident*

Defendant next argues that whatever loss of income Plaintiff may have suffered beginning in October 2009, such losses were not caused by the October 5, 2009, accident. Defendant notes

11

that Plaintiff continued to work following the accident, and that on April 1, 2010, Plaintiff underwent an Independent Medical Examination with a Dr. Boike at Defendant's request, who concluded the following:

> [Plaintiff] does not have classical radicular symptomology involving her arms or legs. I do not believe she is a candidate for cervical, thorasic or lumbosacral spine surgery. I do not believe she is a candidate for additional epidural injections. I likewise do not believe she is a candidate for any type of medical branch block/fact rhistomy . . . .
>
> I do not believe [Plainitff] requires assistance with household activities. She does not require attendant care. I believe [Plainitff] can continue to perform her usual work duties as a radio advertising salesperson.

Defendant further argues that the injuries Plaintiff complains of were pre-existing at the time of the October 5, 2009, accident. Plaintiff admittedly was involved in an automobile accident in 2004, after which Plaintiff sought medical treatment for injuries similar to those complained of in this lawsuit, including neck and back pain, radiating pain to extremities, numbness, and tingling in extremities. According to Defendant, this demonstrates that there is a lack of evidence to conclude that Plaintiff's current injuries were caused by the October 5, 2009, accident, as opposed to her pre-existing injuries.

With respect to the medical evidence regarding Plaintiff's injuries, Plaintiff responds that—at a minimum—this issue is genuinely disputed. While Dr. Boike reported that Plaintiff could continue to perform her usual work duties as a radio advertising salesperson, Plaintiff's treating physicians, Drs. Tong and Ghary, stated in sworn affidavits that (1) Plaintiff was partially disabled as a result of the October 5, 2009, accident, (2) Plaintiff is no longer able to perform her normal work activities or household activities, and (3) the treatment they provided to Plaintiff was reasonable and necessary

and related to the automobile accident of October 5, 2009.

With respect to Plaintiff's symptoms of pain that began in 2004, Plaintiff testified repeatedly in her deposition that the pain she experienced in 2005 subsided prior to the October 5, 2009, accident. Furthermore, as Plaintiff points out, the reports of Plaintiff's prior symptoms ceased in 2005. Accordingly, Plaintiff has presented evidence sufficient for a reasonable juror to conclude that she sustained disabling injuries in the October 5, 2009, accident, which prevented her from performing her normal work duties and earning as much income as she would have had she not been injured.

### *iv. Whether Plaintiff Failed to Mitigate Damages*

Lastly, Defendant argues that Plaintiff failed to mitigate her damages with regard to wage losses by taking FMLA leave in July 2010. However, Defendant fails to offer any additional argument, explanation, or legal support for why taking FMLA leave constitutes a failure to mitigate damages. Accordingly, Defendant has failed to demonstrate that Plaintiff's act of taking FMLA leave entitles it to partial summary judgment.

## V. CONCLUSION

Accordingly, for the above reasons, IT IS HEREBY ORDERED that Plaintiff's motion for partial summary judgment regarding wage loss [dkt 17] is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for partial summary judgment regarding wage loss [dkt 39] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for partial summary judgment regarding medical bills [dkt 19] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for partial summary judgment regarding

replacement services and medical mileage [dkt 38] is DENIED.

     IT IS SO ORDERED.

                                    S/Lawrence P. Zatkoff
                                    LAWRENCE P. ZATKOFF
                                    UNITED STATES DISTRICT JUDGE

Dated: July 7, 2011

## CERTIFICATE OF SERVICE

     The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on July 7, 2011.

                                    S/Marie E. Verlinde
                                    Case Manager
                                    (810) 984-3290